Lusby **MOWBRAY, Sadie Mowbray, et al., individually and on behalf of all others similarly situated, Plaintiffs,**

v.

Bruce U. **KOZLOWSKI, individually, and in his official capacity as Director of the Virginia Department of Medical Assistance, et al., Defendants.**

**Civ. A. No. 89–0014–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Nov. 22, 1989.

John M.A.. DiPippa, John E. Whitfield, Blue Ridge Legal Services, Inc., Harrisonburg, Va., Claire E. Curry, Charlottesville–Albemarle Legal Aid Society, Charlottesville, Va., Jeanne Finberg, Nat. Sr. Citizens Law Center, Los Angeles, Cal., Margaret T. Schenck, Client Centered Legal Services of Southwest Va., Inc., Castlewood, Va., James W. Speer, Central Va. Legal Aid Society, Inc., Richmond, Va., Robert Golcheski, Va. Legal Aid Society, Lynchburg, Va., for plaintiffs.

Virginia Manhard, Asst. Atty. Gen., Richmond, Va., E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., David R. Smith, Office of General Counsel, Dept. of HHS, Washington, D.C., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case is currently before the court on the motion of Bruce Kozlowski (the "state defendant"), pursuant to Rule 62(c), Fed.R. Civ.P., for a stay. On October 25, 1989, the court issued a Memorandum Opinion and Order which granted plaintiffs' mo-

tions for summary judgment and certified this case as a class action. 724 F.Supp. 404. The court issued a permanent injunction requiring the defendants to provide Medicaid benefits to the plaintiff class in accordance with the court's Order, along with certain other relief. On November 8, 1989, the state defendant filed a notice of appeal as to several portions of the October 25 Order.[1] At the same time, he also filed the present motion under Rule 62(c) for a stay of those portions of the Order appealed from pending resolution of the appeal by the Fourth Circuit. Counsel inform the court that the appeal has been expedited and is scheduled for oral argument in March of 1990. The motion was briefed, and both parties were heard at oral argument on November 21, 1989.

### I

The standards which guide the court's determination of the issue before it are clear and are not disputed by the parties. Under *Long v. Robinson*, 432 F.2d 977 (4th Cir.1970), the court must consider four factors: (1) whether the movant will likely prevail on the merits of the appeal; (2) whether the movant will suffer irreparable injury if the stay is not granted; (3) whether the nonmoving party will be substantially harmed by the stay; and (4) whether the public interest will be served by granting the stay. *See Id.* at 979. *See Alexandria v. Helms*, 719 F.2d 699, 700 (4th Cir.1983). The court will address these four factors *seriatim*.

### II

The first factor, movant's likelihood of success on the merits of the appeal, places the court in something of an awkward position—that of foreshadowing the fate of its opinion before the appellate

1. Specifically, the state defendant appeals from that portion of the Order which entered a permanent injunction prohibiting him from
   (1) Using income or resource methodologies to determine medicaid eligibility which are more restrictive than the income and resource methodologies under SSI.
   (2) Using income or resource methodologies to determine eligibility for QMB benefits

which are more restrictive than the income and resource methodologies under SSI.
   (3) Using resource standards to determine eligibility for QMB benefits which are more restrictive than twice the resource standard under SSI.
The state defendant also appealed from those portions of the Order which authorized a class action and certified a class and subclass.

court. The defendant, citing *United States v. Baylor Univ. Medical Center,* 711 F.2d 38 (5th Cir.1983), argues that such prophesying is unnecessary; where the case presents a "serious legal issue" the court should find that the first factor weighs in favor of granting the stay. Plaintiffs argue that the court should look at the merits, and in light of the lack of "reservations" in the October 25 Opinion, grant the stay. The court does not see this as the decisive factor in resolving the present motion, and therefore declines to guess at the outcome of the appeal; the other factors weigh significantly in favor of denying the stay. In such a case, where the balance of equities favors the nonmoving party, the proponent of the motion must show a reasonable probability of success, not merely a substantial case on the merits. *See Gusdonovich v. Business Information Co.,* 119 F.R.D. 15, 16 (W.D.Pa.1987), *citing Ruiz v. Estelle,* 666 F.2d 854, 856–857 (5th Cir. 1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

The defendant argued in his memorandum that the court's failure to address in the October 25 Opinion the issue of the retroactive nature of the amendments at issue in this case created a "serious legal issue" on appeal. The court disagrees. The court did not specifically address this issue previously only because it seemed further to extend an already lengthy opinion, but will set out its rationale here.

Congress's goal in all of the amendments to Title XIX which are at issue in this case was to allow the States be more generous than SSI if they chose to do so, but not to allow them to be more restrictive. This intent was made clear with the first amendment involved, the 1982 TEFRA amendment. *See* S.Rep. 109, 100th Cong. 1st Sess. 22, *reprinted in* 1987 U.S.Code Cong. & Admin.News at 682, 702–703. It is logical that all subsequent amendments were made retroactive to 1982, the date of the original TEFRA amendment, since these later changes were, for the most part, efforts to clarify Congressional intent in the 1982 amendment due to subsequent, adverse judicial and administrative decisions.

*See* the Memorandum Opinion of October 25, 1989.

Since the decision in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), it has been settled that the Eleventh Amendment bars suits in federal courts retroactively to recover underpaid benefits. *Id.* at 678, 94 S.Ct. at 1363. Thus, Congress's action in 1988, making the language in MCCA § 303(e) retroactive to 1982 does not, as a matter of federal law, create any increased liability on the part of the States; it merely makes clear that states which have been more generous since 1982 have not been in violation of federal law. That liability might exist under state law may or may not be an issue which concerned Congress. Either way, it does not affect the meaning or interpretation of the statutory language before the court in this action, nor does it make the issues raised by the appeal any more serious.

■ Under the second factor, the court must find that the defendant will suffer irreparable harm if the stay is not granted. The defendant urges the court not to merely balance the comparative financial resources of the parties, but to look at the larger obligations to all citizens that the Commonwealth bears. Such obligations, he argues, merit special concern being given to the Commonwealth's plight. Nonetheless, the defendant does not deny that the effect on the Commonwealth of denying the stay will be largely economic and administrative. The plaintiff class representatives argue that such monetary and administrative costs cannot constitute irreparable injury.

In *Long,* Judge Winter stated " '[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough' " to show irreparable harm. *Long,* 432 F.2d at 980, *quoting Virginia Petroleum Jobbers Assoc. v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C.Cir. 1958). While not a public benefits case, *Long* involved a situation where, as a result of the court's order, the defendant City of Baltimore would be required to build

public facilities, purchase equipment, and hire additional employees all at uncalculated, though undoubtedly large, cost to the defendant and the taxpayers. This was not found to be sufficient to constitute irreparable harm. *Id.* at 978–980. Nor was the fact that other citizens assisted by the defendant would be adversely impacted by the drain on the city's resources a source of irreparable harm. *Id.*[2]

In light of the *Long* decision, the court concludes that the harm to be suffered by the defendant if the stay is denied, though perhaps substantial, is a loss of "money, time and energy necessarily expended" in compliance with the court's Order, and thus, under *Long*, not irreparable.

The third factor calls for a determination as to whether, if the stay is granted, substantial harm will befall the plaintiff class members. Defendant stated at oral argument that harm to the class members would be minimal since they need only comply with the present regulations in order to receive needed medical benefits. This contention, at a bare minimum, begs the entire question before the court both presently on this motion, and on the merits. The court has held that the defendant's actions are contrary to federal law and deprive the class members of needed medical benefits. To argue that because the defendant disagrees with the court's conclusion, a continuation of this unlawful conduct will cause only minimal harm to the intended beneficiaries is untenable.

The class includes approximately some 9,000 members. If a stay is granted, some number of these will be faced with the difficult decision of either forgoing needed medical attention, forgoing other expenditures, or disposing of enough of their property to come within the guidelines as to assistance, which guidelines are the very substance of this action. Failure to obtain needed medical care could result in the death of some class members. Surely this is substantial, if not irreparable harm. If class members choose to seek medical care and skimp on other necessities such as food, clothing or shelter they may also be substantially harmed. Finally, if they do as the defendant argues, and comply with regulations previously held by the court to be unlawful, and thus sell off all or a portion of their land, the harm will also be irreparable. Once sold, the seller cannot force the buyer to return the land. If the plaintiffs prevail on appeal, these class members will be left without any recourse whatsoever. It seems beyond dispute that harm to the class members, if the stay is granted, will be irreparable.

Finally, the court must determine whether the "public interest" will be served by the issuance of the stay. This involves the weighing of two factors. The public undoubtedly has an interest in reducing the drain on the Commonwealth's treasury; it also has an interest in making sure that benefits to AFDC recipients and others are processed as expeditiously as possible. Alternatively, the public also has an interest in seeing that people of limited resources are able to obtain potentially lifesaving medical care. It is the court's determination that the latter interest prevails.

### III

In conclusion, the court finds that irreparable harm, as that term has been interpreted, will not befall the defendant if a stay is not granted pending appeal. On the other hand, harm to the plaintiff class members, should such a stay be granted, will be irreparable. The public interest will be served by the denial of a stay. While the issues in this case are original, the rules of statutory interpretation are well established and, while not considered by this court to be of major import in this decision, see pages 889–90, *infra*, the court does not believe that the moving party has shown a "reasonable probability of success" on the merits. The motion for a stay pursuant to Rule 62(c), Fed.R.Civ.P. shall accordingly be denied.

---

**2.** The defendant here raises the same argument, stating that the transfer of resources to other areas occasioned by the court's Order will nec-

essarily slow the processing of applications for AFDC benefits.

In the event the stay should be granted on appeal, the unusual circumstances of this case, where the Temporary Restraining Order has by consent of counsel been extended over a period of some nine months as to the eight individual plaintiffs, lead this court to hope that some arrangement to protect these eight plaintiffs pending the outcome of the appeal on the merits could be arranged.

An appropriate Order shall this day issue.